UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:21-cv-00004-RJC-DSC

| MARTHA MAE JOHNSON, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on the Parties' Cross Motions for Summary Judgment (Doc. Nos. 11, 13), the Magistrate Judge's Memorandum and Recommendation ("M&R") (Doc. No. 15), and the Plaintiff's objection (Doc. No. 16). Having fully considered the written arguments, administrative record, and applicable authority, the Court finds that Defendant's decision to deny Plaintiff Social Security benefits is supported by substantial evidence. Accordingly, the Court **ADOPTS** the M&R and **GRANTS** Defendant's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff Martha Mae Johnson ("Johnson") seeks judicial review of the Commissioner of Social Security's ("Defendant" or "Commissioner") denial of her social security claim. Johnson filed an application for supplemental security income on April 24, 2019, with an amended alleged onset date of the same day. (Tr.[1] 10).

In denying Johnson's social security claim, the ALJ conducted a five-step sequential

---

[1] Citations to "Tr." throughout the order refer to the administrative record at Doc. No. 9.

evaluation. (*Id.* at 12-19). At step one, the ALJ found that Johnson had not engaged in substantial gainful activity since the application date. (*Id.* at 12). At step two, the ALJ found that Johnson had the following combination of severe impairments: lumbar degenerative disc disease, bilateral sciatica, asthma, and obesity (20 CFR 416.920(c)). (*Id.*). At step three, the ALJ found that none of the impairments, or combinations of impairments, met or equaled the severity of a listed impairment. (*Id.* at 13). Before moving to step four, the ALJ found that Johnson had the residual functional capacity ("RFC") as follows:

> to perform a range of light work as defined in 20 CFR 416.967(b). The claimant is able to lift and carry 20 pounds occasionally and 10 pounds frequently. Stand/walk up to 6 hours in 8-hour day. Sit up to 6 hours in 8-hour day. She requires the option to alternate between sitting for 30 minutes and standing for 30 minutes throughout the day. She is limited to occasional climbing, balancing, stooping, crouching, kneeling, and crawling. She must avoid concentrated exposure to dust, odors, fumes, and other pulmonary irritants. She must avoid working at unprotected heights and around dangerous machinery.

(*Id.* at 13-14). At step four, the ALJ found that Johnson had no past relevant work, and found at step five that Johnson could perform jobs that existed in significant numbers in the national economy. (*Id.* at 17-18).

After exhausting his administrative remedies, Johnson brought the instant action for review of Defendant's decision denying Johnson's application for disability benefits. (Doc. No. 1).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d

343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d at 1456; *see also Smith v. Schweiker*, 795 F.2d at 345; *and Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III.     DISCUSSION OF CLAIM

Johnson challenges the decision on two grounds (1) the ALJ failed to build an accurate and logical bridge between the evidence to her conclusion in formulating Johnson's RFC; and (2) the vocational expert's ("VE") testimony does not constitute substantial evidence. The Magistrate Judge concluded the ALJ's RFC determination is supported by substantial evidence and the ALJ

did not err in considering the VE's testimony; thus, the M&R recommended the Court affirm the Defendant's decision to deny disability benefits. Johnson objected to the M&R because it "does not adequately address any of the errors made by the ALJ . . . [and] reasserts each of her arguments" made in her motion for summary judgment. (Doc. No. 16). Defendant did not respond to Johnson's objection to the M&R.

### A. RFC Assessment

Johnson argues (1) the ALJ failed to build an accurate and logical bridge between the evidence and her conclusion regarding Johnson's limitations for sitting and standing/walking; and (2) the ALJ cherry-picked or stated inaccuracies about the evidence in assessing Johnson's RFC. Defendant argues the RFC is supported by substantial evidence.

The determination of eligibility for social security benefits involves a five-step inquiry. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). "The five step inquiry asks whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of [one of certain listed] impairments . . .; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work." *Id.* at 653 n.1; 20 C.F.R. § 404.1520. Before the fourth step, the ALJ determines the claimant's RFC, which is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). The ALJ first assesses the nature and extent of the claimant's physical and mental limitations and restrictions and then determines the claimant's RFC for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(b). The RFC should be assessed "based on all the relevant evidence in [the claimant's] case record" and considering all of the claimant's medically determinable

impairments. 20 C.F.R. § 404.1545(a). "[A]n ALJ must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (quotations omitted). "In other words, the ALJ must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Id.* (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

First, the ALJ sufficiently explained her conclusion regarding Johnson's limitations for sitting, standing, and walking. Relevant here, the ALJ determined Johnson has the RFC for light work including "[s]tand/walk up to 6 hours in 8-hour day. Sit up to 6 hours in 8-hour day. She requires the option to alternate between sitting for 30 minutes and standing for 30 minutes throughout the day." (Tr. 14). In reaching this conclusion, the ALJ discussed in detail Johnson's subjective testimony regarding her ability to sit, stand, and walk, including that she "can sit in an upright chair with her feet down for one minute or less" and "cannot stand in one place for longer than a couple of minutes without severe pain," but that medication, which causes side effects such as sleepiness, helps decrease her pain, but does not provide complete relief. (*Id.* at 14-15). Further, the ALJ considered Johnson's daily activities and related limitations, including that she uses a rolling walker or cane since April 2019. (*Id.* at 15). The ALJ also considered the medical evidence and found Johnson's testimony was not entirely consistent with the other evidence. (*Id.*). The ALJ discussed in detail the medical evidence including x-rays and MRIs of Johnson's spine, sensory examinations, and Dr. Lacin's conclusion that Johnson's "neurological symptomatology is certainly not explained by what was seen on the MRI." (*Id.*). Next, the ALJ noted that Johnson presents to doctor appointments with a walker and that no medical provider prescribed or recommended Johnson use an assistive device. (*Id.*). As for medical opinions, the ALJ explained

that she did not find the state agency medical consultants opinion that Johnson could perform medium work with frequent climbing, balancing, and stopping persuasive because they did not adequately consider Johnson's subjective complaints. (*Id.* at 17). Further, she noted that Johnson's primary care practitioner's opinion that he would "not recommend disability" was a finding reserved to the Commissioner. (*Id.*).

After analyzing the medical and nonmedical evidence, the ALJ explained her conclusion:

> [t]o account for the claimant's lumbar spine related impairments and sciatica, I have limited the claimant to work with the option to alternate between sitting for 30 minutes and standing for 30 minutes throughout the day. I have limited the claimant to occasional climbing, balancing, stopping, crouching, kneeling, and crawling. She must avoid working at unprotected heights and around dangerous machinery due to pain and potential side effects of medication.

(*Id.*).

The ALJ built an accurate and logical bridge between the evidence and her conclusion. She rejected medical opinions indicating Johnson had the RFC for medium work, discussed the differing evidence relating to Johnson's pain and ability to sit, stand, and walk in detail, and ultimately concluded Johnson had the RFC for light work with additional non-exertional limitations as set forth in the RFC to account for Johnson's lumbar spine and sciatica impairments which the ALJ discussed in detail. Johnson argues the ALJ erred because she did not explain how Johnson could stand/walk for 6 hours each day over an 8-hour period if she "had to alternate between sitting and standing on a thirty-minute rotation." (Doc. No. 11-1 at 7). However, this argument is unpersuasive because the ALJ did not conclude Johnson cannot stand for more than 30 minute periods without a break to sit. Rather, she included a limitation providing the option to take breaks from standing at 30 minute intervals, when needed, to account for Johnson's impairments. The exertional limitation of light work, including the standing requirements, with

other non-exertional limitations, such as optional breaks as needed, can exist simultaneously. Thus, the ALJ adequately explained how she reached her conclusion related to Johnson's ability to sit, stand, and walk.

Next, Johnson argues the the ALJ cherry-picked or stated inaccuracies about the evidence related to Johnson's decreased strength, sensory examinations, lumbar MRIs, and Dr. Robert Lacin's findings and opinions. Johnson provided a lengthy recitation of medical records and contends a number of them were overlooked or misstated by the ALJ. However, the ALJ discussed the medical records in detail and cited evidence that would support finding a disability and evidence that would not support finding a disability. It is not this Court's place to reweigh the evidence, or substitute its judgment for that of the Commissioner, if the Commissioner's final decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d at 1456. Like the Magistrate Judge, the Court finds the RFC is supported by substantial evidence.

### B. VE's Testimony

Plaintiff argues the ALJ erred because (1) the VE's testimony that there were no changes in job numbers after the COVID-19 pandemic was not credible; and (2) there are apparent inconsistencies between the testimony of the VE and the Dictionary of Occupational Titles ("DOT").

The claimant has the burden of production and proof in the first four steps of the five-step process. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite his limitations. *Id.* "To answer this final question—whether sufficient other work exists for the claimant in the national economy—the ALJ relies primarily on the [DOT]" and may also use a vocational expert. *Id.* At the fifth step, remand is required when an ALJ fails to address a

conflict between the DOT and the testimony of the VE. *Thomas v. Berryhill*, 916 F.3d 307, 313 (4th Cir. 2019). The "ALJ independently must identify conflicts between the expert's testimony and the [DOT]," and merely asking the VE if there are any conflicts between the testimony and the DOT is insufficient. *Pearson*, 810 F.3d at 208-09. If apparent conflicts exist, the VE must explain the conflict and the ALJ must also determine whether the explanation provides a basis for relying on the VE's testimony rather than the DOT. *Id.* at 209-10. If the ALJ does not, then her decision cannot be supported by substantial evidence. *Id.*; Social Security Ruling 00-4p ("Neither the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.").

As for Johnson's first argument, the ALJ was in the best position to assess the VE's credibility, who testified based on her knowledge and experience. Additionally, Johnson argues the ALJ failed to address an apparent conflict between the DOT and the VE's testimony. The alleged conflict is the limitation that Johnson "must avoid working around dangerous machinery." Johnson believes each of the three jobs the VE testified she could perform involve the use of or interaction with dangerous machinery thus the VE's testimony was in conflict with the DOT and the ALJ failed to inquire about these conflicts. The Magistrate Judge found this argument unpersuasive because at least one of three jobs the VE provided, laundry folder, does not involve the use of dangerous machinery. Johnson objects arguing the ALJ erred because she did not define "dangerous machinery" or inquire about apparent conflicts with dangerous machinery.

The DOT's description of a laundry folder provides:

Folds fluff-dried or pressed laundry, such as shirts, towels, uniforms, and jackets: Shakes out, smooths, folds, sorts, and stacks wash according to identification tags.

> Inspects pressed laundry for holes or tears, and separates defective articles for transfer to repair department. Folds laundry, preparatory to wrapping, for delivery to customer. Folds pressed shirts around cardboard forms and inserts assembly in plastic bags. May attach missing buttons to articles, using button-sewing-machine or button-attaching machine. May unload tumbler. May turn socks, match pairs, and tie socks into bundles. May be designated according to type of laundry folded as Shirt Folder (laundry & rel.) I; Wearing-Apparel Folder (laundry & rel.).

DOT 369.687-018, 1991 WL 673072. Additionally, the DOT provides that a laundry folder is not exposed to moving mechanical parts, specifically stating "Moving Mech. Parts: Not Present - Activity or condition does not exist." *Id*. The VE testified based on her education, knowledge, and experience that there were no conflicts to resolve. Not every use of equipment requires the use of dangerous machinery and reference to machinery does not in and of itself create an apparent conflict. The Court agrees there is no apparent conflict between the VE and DOT because laundry folder does not require the use of dangerous machinery based on the DOT's description. *See Taylor v. Astrue*, No. 5:09–CV–007–RLV–DCK, 2011 WL 7551135, at *12 (W.D.N.C. July 5, 2011) (Keesler, J.) (concluding VE's testimony did not conflict with DOT where claimant had limitation for working with dangerous machinery and VE provided laundry worker II when laundry worker II did not include moving mechanical parts in description); *see also* Social Security Ruling 83-14 ("In other cases, functional ability may not be impaired by an environmental restriction (e.g., a person may be able to do anything so long as he or she is not near dangerous moving machinery . . . .")). In sum, the ALJ's decision is supported by substantial evidence.

### IV.     CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. The Magistrate Judge's M&R, (Doc. No. 15), is **ADOPTED**;

2. Plaintiff's Motion for Summary Judgment, (Doc. No. 11), is **DENIED**;

3. Defendant's Motion for Summary Judgment, (Doc. No. 13), is **GRANTED**; and

4. Defendant's decision to deny Plaintiff Social Security benefits is **AFFIRMED**.

The Clerk is directed to close this case.

**SO ORDERED.**

Signed: March 30, 2022

Robert J. Conrad, Jr.
United States District Judge